The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Court. You may be seated. We'll get things arranged here in a minute. I want to welcome everyone to the 4th Circuit Court of Appeals. We're glad to be here with you. We have very interesting cases. We look forward to, on behalf of all good lawyers, we look forward to the arguments. In the first case, the United States v. Ortiz. Mr. Returta? Correct my pronunciation. I'm sorry about that. I'm from West Virginia and we mispronounce most everything. I'm from south of the border from Cuba and the name comes from the Basque country in Spain. There's a lot to digest with it. It's great to have you with us. I appreciate that. Yes, sir. I look forward to your argument. Go right ahead, sir. Thank you very much. My name is Manuel Returta. I represent the appellate minor Perez-Chach. I say I represent him and I also represented him at the trial level in this matter. So, as we prep up for oral argument, we have briefed, we think we have identified some significant issues, but also have the ability to give a little perspective as to what was happening. Can you speak just a little louder? It's a big little perspective as to what happened. Are there two appellates here, right? That's right. I represent minor Perez-Chach. Mr. minor Perez-Chach and my co-counsel, Carmen Hernandez, represents Mr. Ortiz. I called out Mr. Ortiz's name. I'm going to charge you for this time. It's correct to refer to the first of those names when they're hyphenated? It is. That is the paternal name. The Yes, sir. Go right ahead, sir. Thank you very much. Your Honor, it is interesting the issues that I'll be focusing on deal with the Stored Communications Act, deal with the denial of trying to suppress the cell site information, and also the summary issue that we have identified. And as I prepared for this, it's interesting because it's kind of three things that kind of melded together into some of the issues that we have identified. And I say that because, obviously, we're making a big ask with the Stored Communications Act, highlighting that what we for a three-month period. The request for the cell site information was made through a Prince George's County order, but it is the breadth, scope, and detail that we have identified in that order that is the problem with the storage. All this was by court order? It was court order, Prince George's County order. But it was a court order? Indeed. Yes. It wasn't like they just went on their own and did all this? No, no. We were living in a... And the judge found probable cause? Indeed. Well, I'm not sure about the probable cause. I'm not sure... Are you claiming there was no probable cause? Well, I hesitate because Prince George's County standard at that point in time, I'm not sure if it was the probable cause. So I cannot answer that. Well, but isn't there a Fourth Circuit law that says that the good faith exception applies here in any event? United States, there's the Chavez cited in the government's brief on page 17? Yes, Your Honor. Well, then where's your argument go? We've already held that. Well, Your Honor, we were living in a post-young world and we were... We're looking at a what? Post-young... Jones, I'm sorry. Post-Jones, Antoine Jones world where the Supreme Court had ruled that coverage of the... What is it? When you attach a surveillance device, you're exceeding what would be a search and therefore you would need a warrant under the Fourth Amendment. So this is now the next step. The technology progressed from Jones. The technology at this point in time in 2016, 2018 took it to the cell phone which we argue is just so much information that's being provided. So Jones was prior to Carpenter, right? Indeed. That's the big case, okay? And then we say there's an exception, a good faith exception to Carpenter in Chavez. So I'm just not really sure where your argument goes. My argument goes back to Jones. It goes back to we need... But you just told me that Carpenter came after that. Carpenter goes further than Jones even. Indeed, it does. Right. Because it goes... And now we know there's a good faith exception to Carpenter. But we don't agree that there's a good faith exception. But if Jones is less, gives you less than Carpenter does, of course there must be. I think you understand my argument. I don't understand your answer. How do you not have good faith when you have a court order? But officers have to... The court order says go do this. You're ordered to go do this. Right. Officers are obliged to comply with the court order. Well, but the court order, again, I can't answer the probable cause question with that because it was a PG county order. It was not the typical... We're talking... We assume you're right. But don't you... Isn't the government entitled to the good faith exception? No. Because we argue that Jones precludes what was happening here before getting to Carpenter. I understand your argument. But we say that Jones... What happened here with the breadth of information that was retrieved is directly relatable to what was decided in Jones. So therefore, it is not followed. It does not go into the analysis of a good faith exception because it needed to be a warrant that should be issued for that search. So we do not go to that. But you have multiple issues here. Right. Four or five or more. And you all divided them up in some way. Yeah. I have the Historic Communications Act. I have the suppression that Judge Titus ordered for that. And the argument regarding the summary witness that kind of makes this pyramid down to the point of they had all this information and it just kept on building and building and building, going outside of what we argued. You have the evidentiary issue at the trial of the expert and the summary witness and all the charts and stuff. Indeed, indeed. Okay. And what was wrong with that? We review all that for abuse of discretion? Indeed. And Judge Titus gave you a trial and he preserved those issues and you argued them to him and he said this is the way we're going to do it. Indeed. And for you to prevail on that issue, you have to say that he, you have to convince us that he abused his discretion in handling it in that way. Indeed. Yeah. Indeed. Go ahead. You can ignore that red light for a few minutes. I want to give you a chance to complete that point. I don't want to put words in your mouth. I'll complete it by noting that in the joint appendix, page 68, there is a motion that is filed by the government. And the government, at that point in time, explains to Judge Titus that they will not be using the cell site information. They will not be using the location data. That touches upon many issues. It touches upon the issue of standing, at least for Mr. Perez-Chotch, which was argued by the government. A motion or a notice is what you call it? It is in their response to plaintiff defendants. Okay. And they said we're not going to be using this evidence? We're not going to be using it? Is that your point? I certainly told the judge something that they didn't end up doing. They misled you? You're saying the government misled you in connection with this issue? Well, I argue that in terms of the standing issue, because we have filed motions for suppression on anything that they had gathered. And the judge said either one of you can make a motion and we'll give you credit for it. Indeed. But the government didn't have any standing anyway, if you have standing. He said if you have standing, I'll give you credit. But it kind of leads down to we have all this information. The information was narrowed down, narrowed down into the cell site information, cell site information. Then, well, maybe we're going to use it when they said they weren't going to use it. Don't worry, we're not going to have a name. And they had names. So the prejudice just kept getting worse and worse as things moved along. So, I respond to that question and I used up my time. And you covered your issues? Covered my issues, yes, your honor. All right. Thank you. Thank you. And Ms. Hernandez? Yes, sir. Good morning, your honor. Good to have you with us. Thank you. I guess it's difficult to find that a judge who's no longer with us abuses his discretion, I suppose, with Judge Titus, who was a very fine judge. But thankfully, I am... You're a trial lawyer also? Yes, sir. I represented Mr. Ortiz-Orellana, and I'll just refer to him by his first of the last names. I represented him at the trial with Mr. Retoreta. I'm presenting a case where the 924 charges in this case can stand, can be sustained, because the underlying offense was Maryland first degree murder and Maryland second degree murder. And they cannot stand under the current standard of law. They are both indivisible offenses as determined by the Maryland courts. And that should really end the inquiry. Under the Supreme Court standard, under Mathis, I'm sorry, under Mathis, the Supreme Court said, a sentencing judge has to do a categorical analysis and determine whether the underlying offense is divisible or indivisible. It actually says, Mathis says, sometimes that's an easy task because the state courts have ruled on that issue. And therefore, that's the end of the inquiry. If a state court has determined that its statutes are indivisible, then that's the end of the inquiry. And these offenses do not qualify as crimes of violence. What Maryland Supreme Court case holds that? Ross... It's from the Maryland Supreme Court? The Maryland Court of Appeals, yes. Yeah, I don't think there is a Maryland Supreme Court case that holds that, is there? Well, Sobotka is a Maryland Court of Special Appeals. That's right. You understand that they're... Yes. And the Maryland Court of Special Appeals is the intermediate appellate court. Correct. And the Maryland Supreme Court, it's only asking if there is a Maryland Supreme Court case on point. I believe that Ross is a Maryland Supreme Court case. That holds what you're saying? That holds that these, it didn't refer to it as divisible or indivisible, but it referred to it as these are not elements, they're modalities, and you do not have to... You did not have to make a finding. The jury did not have to make a finding beyond a reasonable doubt. So they were not, and did not have to be unanimous. So they were under our definition of whether it's an element or a modality. They were elements and they were not and therefore it's indivisible. And then since then there have been a number of other courts, Maryland courts, that have relied on... Do we have to get to that state law issue? Absolutely. What about the indictment says that it was murder under the federal statute 1111? Well, the RICO statute requires that it be a violation of a state court, of a state offense also. And in fact, this court has previously found in Manly that the state offense is an element of a RICO VIGAR murder charge. In Manly, 52 F 4th 148, this court already held that. So these issues have already, I submit to the court, resolved by this court and by the Supreme Court. The government, however, wants to say, no, no, no. It's really generic murder that you should be looking at. But to go there... Their Senate involves the federal statute. Right. But to go there, you'd have to ignore... But what's the indictment say? The indictment refers specifically to the Maryland first degree and second degree murders. And that's in count what? Not only does it refer to it, the RICO statute requires that it refer to it. You're talking about count eight or what is it? Count eight and nine. Eight and nine. Okay. Right. I'm sorry, count nine and ten. Count nine? Yes. Count nine is 924 C... No, I'm sorry. The 924 counts are nine and ten. The counts of conviction that refer to murder are eight and nine. What? Count eight. Which one refers to the federal statute? Count ten? Count eight, the murder charge, refers to the federal statute. A RICO offense, a RICO murder offense requires reference. The RICO statute requires a violation of an underlying state offense. And in this case, the indictment charged Maryland first degree, Maryland second degree murder. And as I said, you would have to ignore... So if it's murder under... You're saying if it's murder under the federal statute, first degree murder, but not murder under the state statute, you win. It could be murder under the federal statute, that doesn't help the government. Murder under the federal statute... Doesn't help the government. It's a federal case. No, no. Murder under the federal statute could be indivisible. Could be what? Murder under the federal statute. If it satisfies 1111, does that satisfy the element? No, because he's not charged with an 1111 charge. He's charged with a RICO murder. And RICO requires both the federal and a related underlying state offense. I don't know if I'm... I'm obviously not making myself clear. The RICO statute, you cannot charge federal murder under RICO. You have to refer to a state... There's a murder definition in section 1111. Correct. But that issue has... A federal murder. That defines murder. Correct. But he wasn't... He was charged with Maryland... Violation of the Maryland... And we got a case on that not recently. Judge Bosch wrote it. What's the name of that one? Well... Jackson or something? I'm sorry. Go ahead. I'm sorry. I didn't hear your question. Okay. But this court has already held that a state offense is an element of a RICO charge. And that was in Manly, 52F148, recently. See, I don't think this court can reverse itself and just look at a generic murder statute. And how did Judge Titus treat it? Judge Titus said he did not go really into this analysis. He what? You know, there's a lot of case law since Judge Titus resolved it. Because for one, the Supreme Court in Borden held that purely accidental death, which is what fits under the felony murder, cannot satisfy the force clause of the 924C. And also, I believe at the time, the force clause and the elements clause were both viable. But since that time, the Supreme Court has invalidated, has held that the... That's happened post-trial. Correct. But I asked you how Judge Titus treated this. Judge Titus rejected the argument. He what? He rejected our argument. He rejected your... You preserved it, he rejected it. Yes, we preserved it and he rejected it. The government claims that we didn't preserve it because we didn't argue against generic murder. Which one of you all is in charge of the double jeopardy claim? Me. Okay. I wasn't gonna... I was gonna... But you've got a red light on. I'm gonna... Yes. Let's see what you... Tell us what you... You know, it's pretty... What your claim is on double jeopardy. So, there is a case by Judge District Court, then District Court Judge Andrew Davis. Who? Judge Davis? Yes, when he was a District Court Judge in Maryland. Before he was up here with us. Before he was up here with you. And he held that you can't have the same conspiracy form the basis for a rego and a conspiracy charge. And that was in 2006? Yes. And the government chose not to take that up on appeal. Maybe they knew then that he was going to become a fourth circuit judge. They chose not to take it up on appeal. So, that's still good law in Maryland. What about the Alia case? Judge Wilkinson's case? Well, you know, I distinguish those cases because I think they presented a different situation, Your Honor. But I have nothing more to add that was put in the brief. I understand there are those cases, but I think they're all distinguishable. So, you got your argument on double jeopardy? Yes. You think your best argument then is the one you were talking about before about the murder? Yes, sir. I mean, I think under the Manley-Mathis line of cases in this court and under the Supreme Court ruling that once the state court decides an issue, that's the end of the interview. What kind of relief would you get if we agree with you? No, those charges would not stand. The 924C charges. So, you get those charges vacated, and what would you be left with? Would you have a life sentence somewhere? Yes, there are other rego charges in the case. And also, Your Honor... Would you be left with if you got relief on those cases on that point? I actually... You still have a bunch of convictions. Yes, I'll come back up on rebuttal and tell you exactly what he'd be left with. I don't have that information right now. On rebuttal, you also might address, assume that we agree with you, that we look to Maryland law. Why isn't Maryland law divisible? So that you have a felony murder and you have first degree murder as two different kinds of murder. And we would look here, use the categorical approach and see which one. You can answer this on rebuttal. I will. Thank you, Your Honor. Ms. Rao? Yes, may it please the court. Good to have you with us, Ms. Rao. Thank you, Judge Kings. Sangeeta Rao on behalf of the United States. Turning to the Ortiz's 924C convictions first. To answer your question, what would be left? There would be a mandatory life term on the Vicar murder count, which is count eight. There would be count one, which was a RICO conspiracy, an aggravated RICO conspiracy, and that would be a life term. There's a Vicar conspiracy to murder, that's count seven. And he got the maximum of 10 years. So in other words, there are two life sentences, one of them being a mandatory life on count eight. That would be what's left. That's what's left. But does that mean you're giving up those arguments? Absolutely not. Maybe you can address their arguments. We do think that the standard of review is plain error, but I think I should go to the merits to address the framework. The what? The framework this court should apply. There are two separate elements for a Vicar offense. That's what this court said in Keene. There's generic federal murder or assault or whatever enumerated offense there is. So the generic crime and the state law element. They are two separate elements. So if either element satisfies the categorical crime of violence analysis, then a 924C or J conviction is valid. Judge King, it's a little different than just saying it's a reliance on 1111. We're not relying on 1111 in the first instance. 1111 has the jurisdictional element. You need to have a murder on federal land, for example. So we're not saying it's 1111. We're saying that the reference to murder in the Vicar statute refers to generic federal murder. And then we say, when you're deciding what generic federal murder means, you have to look what Congress intended. Congress would have intended what it said what's in 1111, what's in the federal murder statute. So you are relying on the 1111 definition of murder? Yes. Well, that's what I was talking about. Just not in the first instance. We're not saying that if you needed a violation of 1111, you would need the jurisdictional element. You would need to prove... Right. It wasn't a murder on a federal reservation or in the courthouse. Right. So we look to 1111. But 1111 defines murder. Yes, absolutely. That's what Congress intended at the time the Vicar statute was enacted. 1111 had already been in existence for 35 years. And before that, the predecessor murder statutes had been largely the same. So how do you know that? You've just told us what Congress intended. Do you have legislative history? Uh, well, I would say that yes, because we know that Congress understood it. Well, I'm not sure Congress does understand. So unless you have... You can point me to something which says that. Assume that you're not correct here just for a moment. Then do you lose that argument? Do you have anything that you rely on in state? Yes. And what is that argument? So there is just a legislative history point, which is that when Congress enacted the Vicar murder, it actually amended 1111. It amended the felony murder aspect of 1111. So that shows that it was very aware of 1111 at the time. But turning to the state law issue, the standard of review here is plain error. And I can address why it should be plain error. But I think that you want me to go to the merits first, Judge Monson. So I will. The text of the Maryland statute supports divisibility. It's similar... I mean, maybe put the microphone a little... Swallow your words just a tad for my own ears. I apologize. Thank you. The Maryland murder statute is similar to the federal murder statute that this court already found to be divisible in Jackson. It describes alternate versions of first-degree murder by using the disjunctive for felony murder. That's not enough, but it is a factor that this court considers. The textual history of the statute supports divisibility. In the prior version of the statute, the one that was repealed in 2001, Maryland first-degree felony murder was in a separate provision than the other three types of first-degree murder. The reviser's notes, when the statute was amended, indicate that no substantive change was intended. So the fact that they were in separate provisions is a statutory textual argument that they're different. Maryland jury instructions also support divisibility. That's another factor that this court looked at in Jackson. In the pattern instructions, premeditated murder and first-degree felony murder have separate instructions. And the Maryland Court of Appeals has instructed that juries should be given instructions to return special verdicts indicating whether the conviction is based on felony murder or premeditated murder. That's in State v. Fry from Maryland's highest court and cited in our brief. On the other hand, the defendant, and we do think this is on plain error review, which I can go into, the defendant hasn't cited any state court decisions that plainly show indivisibility. They rely on Ross, but Ross is not about jury unanimity. It does have sentences that refer to murder as one crime. But the Maryland high courts refer to first-degree and second-degree murder as one crime. It depends on the context. And we know that in Maryland, first-degree and second-degree murder have different penalties. So we know that under the Supreme Court's Mavis decision, there's certainly different crimes for divisibility purposes. So just taking stray sentences from Ross that sometimes refer to Maryland murder as one crime isn't enough to plainly show indivisibility. In this court and in their brief, they cite Sobotka. But Sobotka is both an intermediate decision and is non-precedential. Sobotka itself has a footnote that says it can't be cited even as persuasive authority in Maryland courts. So it's simply not before this court properly. Those are the only first-degree murder cases that the defendants cite. Because of that, because both of the textual clues and because it's their burden, they haven't met it. So even if this court relies only on the state law predicates, it should find that the defendants haven't established indivisibility under plain error. I'd like to address the plain error. You're saying, you're agreeing we have to decide the state law issue. I'm not, Your Honor. It sounds like you are. You're arguing about the state law. Can we decide this without deciding state law? Can we decide it on federal law? Yes. And that's the first argument we make in our brief. And it's the first argument I wanted to address here. Judge Motz asked me to assume that we could rely on federal law. I think that this court doesn't need to decide the state law issue. It should actually decide it on the federal law issue. Because I think it's clear in Keene that there are two separate elements. And I think it's clear that one of those elements is generic federal murder, which is informed by 11-11 murder. And it is divisible. We know 11-11 murder is divisible from Jackson. And that informs the federal generic murder, which it's all about congressional intent. And Congress, when it was enacting the Vicar Statute, we think that there are sufficient clues that we know that it was thinking about 11-11. We've cited a couple of cases from other circuits. Now, is that what Judge Titus ruled on? Well, did he agree with your position that you're espousing right now? This argument was forfeited below. So Judge Titus never considered it. So in order to explain the plain error part of it, the defendant, in his opening brief, even said that there were no pretrial motions that were the subject of this appeal. It says that on page five. And he's right. Below, the defendant argued that vicar murder was not a categorical crime of violence, but on an entirely different ground. The argument was based on conduct. He argued that under 924C's force clause, vicar murder was not a crime of violence because murder encompassed nonviolent force, such as poisoning, the Castleman decision. On appeal, he raises an entirely different argument. He focuses on intent. He says that vicar murder is not a crime of violence because it can be committed by negligence or recklessness because of the felony murder rule. Conduct and intent are entirely different. An argument on conduct does not preserve an argument on intent. So you want us to resolve this on the failure to preserve? Well, she just wants to win. We do think, Your Honor, that on plain error, we win under the federal element and the state law element. Even under de novo review for the federal element, we think we win anyway. We think that the statutes are clear and also there's no error. The jury found premeditated murder in this case. It had a special verdict that it returned in relation to the count one RICO conspiracy that said, yes, we find that Eric Mendez, the victim, was murdered in a premeditated manner. We quote the exact language in our brief. Now, for the vicar murder count, the district court did not instruct on premeditated murder there. That's because this issue wasn't raised. But because of the count one special verdict, we know that there was no harm. We know that if the defendant has the burden, we know it if the government has the burden. We can use the count one verdict to inform our consideration of the other, the rest of the verdict? Yes, when you're considering prejudice, you can. And that would be both on harmless error or on plain error review. So again, whichever standard review this court uses, we should win on the federal element. If the court, for whatever reason, goes to the state law element, we win again on plain error review. I have a question about an argument that the defendant has not raised. And that is whether there is a double jeopardy problem with the 924C and 924J convictions. Yes, Your Honor. In a 28J letter, I referred to these as the housekeeping issues, so I appreciate you bringing it up. We noted that there are two firearms convictions, the 920C and the 924J, or T's should not have a cumulative punishment for both. That's based on the Palacios' decision from this court. The remedy is that the 924C conviction, which is count nine, should be vacated. That's what this- Government espouses that position. Yes, that's what this court did in Landa Verde Guerron, which is cited in our brief on a different point. The court vacated the 924C conviction and sentence. It affirmed all the other convictions in the sentence, and it remanded to the district court to correct the judgment. There's another issue that we also mentioned in our 928J letter, and that's the Supreme Court's Laura decision from a few months ago. So under that decision, the sentencing court here, Judge Titus, was incorrect in believing that he was required to impose a consecutive sentence for the 924J violation. The court now, under Laura, may instead impose either a concurrent or a consecutive sentence. So in other words, we have the 924J conviction left. 924C should be vacated, but there should be a remand on the 924J so that the district court can decide whether it wants to run that sentence concurrently or consecutively to all the other sentences. As I mentioned, this won't really make a difference in Defendant Ortiz's convictions. He has a mandatory life on the Vicar murder, and he's got a life on the Rico conspiracy. It would not make any difference on his sentence, you mean? On his ultimate sentence, but we do agree it should be remanded so we can... It needs to be remanded. So the government says, you're saying we need to... Tell me that again. We need to vacate Count 9... Vacate Count 9, the 924C, affirm Count 10, the 924J, the conviction, but vacate the 924J consecutive life sentence and remand... Vacate the consecutive life sentence on Count 10? Yes, on Count 10. Affirm the conviction and vacate the sentence. Yes, that's right, Judge King. Affirm 924J, which is Count 10, vacate the sentence, remand with instructions that the court should consider whether to run the Count 10, 924J sentence consecutively or concurrently. And of course, it's another district judge. Yes. So the only thing you... Your only suggestion is changing the situation with respects to Count 9 and 10? Yes, in those procedural ways. And you think the rest of it ought to be affirmed? Yes. Yes, Your Honor. I'd be happy to address the cell phone or the summary chart issue unless the court has specific questions. I'll just go to the cell phone. Looks like the court perhaps does not have any questions. Go ahead. I'm one of the ones to cut you off. On the cell phone location argument, I do want to point out that Defendant Perez has waived this argument. He waived any challenge to his phone information because he did not move to suppress any location information. But they adopted, didn't he? Judge Tardy said one of you makes a motion, the other can adopt it. You don't have to jump through the hoop twice. That's right. Any motion that he has standing to adopt. So we have to abide by that? Absolutely, Your Honor. And the district court, Judge Titus, over and over said any motion that the defendant has standing to adopt. They have standing to adopt. If they didn't have standing, they didn't adopt it. They couldn't have made the motion to begin with. Defendant Perez has no standing with Defendant Ortiz's cell phone. Defendant Ortiz made an application in Prince George's County Court related to the information from his cell phone. Defendant Perez has no standing to contest that. There was an entirely separate application in United States District Court in June 2013 for the information from Defendant Perez's phone. That was not the subject of any kind of motion to suppress below. In their reply brief, they say for the first time that they did preserve a challenge to Perez's cell phone location information through Docket Entry 145. Docket Entry 145 is a motion to suppress by Defendant Perez on an entirely different issue. It's about suppressing the evidence from the consent search of his house. And it has nothing to do with the Fourth Amendment. It has nothing to do with his cell phone. He doesn't even argue that it's a fruit. He doesn't argue that because of the search of his house, as a fruit, there was a finding of the cell phone. So for that reason, Defendant Perez has waived any challenge to the cell phone, to the cell site location information that he's now trying to challenge because he never challenged anything to do with his phone below and he can't rely on Defendant Ortiz. For Defendant Ortiz, we think that the easiest path for this court is to assume that he preserved his errors, presume he preserved his challenges, and then go to either good faith, the Chavez decision, or harmless error. So you're saying he waived it, but you want us to presume he didn't? I was talking about Ortiz. All right. For Perez, he waived it. For Ortiz, we think that the easiest path is to assume it was preserved and rule that the officers were operating in good faith and regardless, it would have been harmless error. There is video of Defendant Ortiz admitting the crime, admitting the murder, acting it out. That's powerful. It's specific. It's detailed. It's corroborated by more testimony from Parada, who helped Defendant Ortiz stalk the victim the month earlier. It's corroborated by a cellmate of Moreno, who was the person who committed the crime with Perez, but also saying that the crime happened, that they stalked the victim from the laundromat and then killed him by shooting him outside his house. So on either level, good faith or harmless error, this court can easily affirm on the cell phone location information issue. You're arguing what we used to call, when I was the prosecutor, the clearly guilty rule. Is that it? If this court goes to harmless error, absolutely. There's overwhelming evidence. Unless the court has further questions, we'll rest on our brief for the remaining issues. Thank you very much, Mr. Rao. Mr. Roterta. Thank you, Your Honor. The document, the pleading that we filed requesting suppression is 145 on the ECF. And our third point there, we specifically state any and all other property papers, information or testimony pertaining to Mr. Perez, obtained or taken from him, honor about May 20th, consistent with government's argument. But we also include, and at any time thereafter, by agents of ICE, PG, police department, or by any other person or law enforcement agents acting in concert with. Again, join that with the government representation to Judge Titus, that they were not intending to introduce any cell site information. That issue should have been closed. It wasn't. It was brought up again. It was highlighted by Ms. Hernandez and Mr. Ortiz-Oriano. But it was a objection that as Judge Titus said, as we were running through this trial and trying to get through the timing of everything, we have joined. It is his words. So we joined in that. And then it was aggravated further by the summary witness. Summary witness then drawing upon the information that was obtained, putting it into that report that we have a problem with. And then, going one step further after saying that they would not put the names of any defendants in these reports or testify to, there was a reference to Mr. Perez-Chach. So the prejudice against him, the violation of introducing that is prejudiced to Mr. Perez-Chach. Thank you. Thank you, sir. Ms. Hernandez. So just to address a couple things. This is not a plain error review. That's addressed in note 12 of our reply brief. Judge Titus ruled on the issue whether it was the Maryland statutes were a crime or violence. Number two, the court, Judge Modst, you asked about Maryland cases. And I'm happy to. So there is a Maryland Court of Special Appeals unpublished opinion, which is on point. And that case relies on Ross and other cases. There is a long line of Maryland cases. And it's not an extraordinary thing. Most state, most state, and this is referred to by in a Supreme Court case, most state first degree murder statutes are indivisible. They have these multiple, you know, felony murder or other murders. But so first, the law is clear that the court, that this in making the, this analysis courts can rely on unpublished opinions from state courts. Number two, Sobotka is, relies on Ross and, which is a published opinion, which clearly says that it's, they're not elements. After, after Sobotka, so Ross, the Court of Appeals expressly declared that there is but one offense, murder in the first degree, but that that offense may be committed in more than one way. That's Ross 519, a second at 737. In Ross, the Court of Appeals confirmed that Maryland first degree murder can be charged without specifying whether it is predicated on felony murder versus premeditated murder. In Ross, the Court of Appeals explained that, and that's a published opinion because murder is a single offense. The state is ordinarily required to proceed upon all available theories in a single prosecution. And it may not bring seriatim prosecutions for the same offense by alleging separate legal theories. Fourth, the Maryland Court of Special Appeals published decision after Sobotka, a case named Cuadio v. State, K-O-U-A-D-I-O 179, 8th 3rd, 323, 2018, Maryland Court of Special Appeals confirmed that the Court of Special Appeals got it right in Sobotka. In Cuadio, the Court of Special Appeals held that Maryland second degree murder is a single offense with alternative means that a jury never has to unanimously select. And they're exactly the same, first degree and second degree murder under Maryland law. Fifth, in Edwards v. State, the Maryland Court of Special Appeals 223, Maryland Appellate 711, 2015, relying on published appellate decisions including Ross, once again reinforced that felony murder is not a separate and distinct crime from the first degree premeditated murder. It is simply, let me rephrase, quote, felony murder is not a separate and distinct crime from first degree premeditated murder. It is simply a different modality of a single crime. First degree murder may be committed in two ways, premeditated murder and felony murder. Premeditated murder and felony murder are simply alternative means of committing the same crime and are not separate and distinct crimes. That's Edwards v. State. That was a long quote. That's a 2015 case. So there is no doubt that if you were in Maryland State Court, there would be no doubt in Maryland State Court that Maryland first degree murder encompasses felony murder and it's an indivisible charge. And the government's analysis is a novel analysis that is inconsistent with this court's prior rulings and with the Supreme Court in Mathis. And I don't think maybe those cases are wrong, but I don't think this panel can reverse itself, can reverse other decisions of this court. It's a novel argument that the government is asking the court to not look at state court, but to do its own analysis. It's look at the structure, look at this, look at the other thing. Supreme Court has said you don't have to do that. Once the state court speaks, that's it, because otherwise you're going to... And this court has said it makes no sense for us to revisit what the... Not only it makes no sense, it would create chaos for you to revisit what the state court said. Ms. Hernandez, I'm being very liberal. Yes, sir. Thank you. I'm sorry for running over. Tom, I want to say to both of you appellate lawyers for the defendants, court appointed and have been for years and years. And we really appreciate your work. Thank you. In this case, this is a tough situation for everybody. And I admire, we admire what you've done in this case. Thank you, Your Honor. And the system needs you and appreciates you. Thanks. Thank you. It was a difficult case. I know this isn't the place, but it was a pleasure to try a case in front of Judge Titus. And it was a very difficult case, multi-defendant, lots of issues. And I just have to say that because it's sad that he's gone. We're going to, instead of coming down and greet counsel, I'm going to ask counsel to come up and greet us. If you would do that, and we will stand and do that.
judges: Robert B. King, Diana Gribbon Motz, Henry F. Floyd